[640 NYS2d 898]

In the Matter of I. PETER VENEZIA (Admitted as IGNATIUS PETER VENEZIA), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 15, 1996

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains, for petitioner.

*Simonson & Cohen, P. C.,* Staten Island *(James R. Cohen* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition containing 31 charges of professional misconduct. Charges Sixteen and Twenty-three were withdrawn by the petitioner. The Special Referee sustained all of the remaining charges with the exception of Charges Twenty-six and Twenty-eight, which were dismissed. The Grievance Committee moves to confirm so much of the Special Referee's report as sustained 27 charges and to disaffirm with respect to Charges Twenty-six and Twenty-eight. The respondent cross-moves to disaffirm that portion of the Special Referee's report as sustained 27 charges, to limit any further suspension to the period of time for which respondent has already been suspended, and to direct that the respondent be reinstated to the practice of law forthwith.

Charge One alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct that reflects adversely on his fitness to practice law by converting funds that were entrusted to him to be held in escrow.

The respondent was retained to represent Theodore and Linda Buiting in the sale of real property to Harry St. Clair, in or about 1987. On or about September 14, 1987, the respondent deposited or caused to be deposited into his attorney escrow account at the Bank of New York in Monroe, a check from the purchaser payable to the respondent, as attorney, and referenced "Buiting," in the amount of $25,000. On or about September 18, 1987, the respondent deposited into that same account a check in the amount of $96,499.29, payable to himself, as attorney, and marked payment approved by Theodore and Lindagail Buiting.

Out of this total deposit of $121,499.29, the respondent promptly issued five checks, totalling approximately $81,942.35, with respect to the Buiting transaction. This left a balance in the escrow account of approximately $39,556.94. No further checks were issued from the respondent's escrow account on behalf of the Buiting matter until approximately February 15, 1988.

At all times between September 17, 1987 and February 15, 1988, the respondent was required to be holding in his escrow

account the sum of $39,556.94 on behalf of the Buitings. On or about December 31, 1987, the balance in the subject escrow account, as demonstrated by the respondent's bank statement, fell to $4,192.54.

Charges Two, Three, and Four also allege conversion.

Charge Two alleged that on or about February 15, 1988, the respondent issued three checks from his escrow account on behalf of the Buitings, totaling approximately $34,451.71. These funds were drawn on other clients' funds, which the respondent was required to be holding in escrow.

Charge Three alleged that the respondent was retained to represent Ronald and Jayne Zeigler in the sale of real property to Arthur and Francey Mosher and Arthur and Susan Bromberg in or about 1987. On or about June 23, 1987, the respondent deposited or caused to be deposited $7,500 on behalf of Arthur and Susan Bromberg into his Bank of New York escrow account. On or about July 8, 1987, he deposited $17,200 on behalf of Arthur and Francey Mosher into that account. The respondent issued no checks from his escrow account relating to either the Mosher or the Bromberg matter between July 8 and August 10, 1987, when the Mosher closing occurred.

The respondent was required, at all times between July 8 and August 10, 1987, to be holding the sum of $24,700 on behalf of Bromberg and Mosher. On July 10, 1987, the balance in the respondent's escrow account, as shown on the bank statement, fell to $18,123.18.

Charge Four alleged that on or about October 30, 1987, the respondent issued a check from his escrow account in the amount of $7,500, payable to Arthur and Susan Bromberg in settlement of that transaction.

Between June 23 and October 30, 1987, the respondent was required to be holding in his escrow account the sum of $7,500 on behalf of the Brombergs. On August 17, the balance in that account, as per the respondent's bank statement, fell to $2,333.66.

Charges Six and Seven allege additional acts of conversion. On or about October 27, 1986, the balance in the respondent's escrow account, per the bank statement, was $11,489.23. On or about October 27, 1986, the respondent wrote check number 2798 to Kenneth E. Davis, in the amount of $12,500, thereby creating an overdraft of $1,010.77.

The respondent was retained to represent Oscar and Linda Perez in the sale of real property to David and Mary Falgiano

in or about October 1986. On or about October 28, 1986, the respondent deposited or caused to be deposited the sum of $14,000 into his Bank of New York escrow account, which was then overdrawn in the amount of $1,010.77. The amount deposited represented the contract deposit from the Falgianos. After the deposit was made on behalf of the Perezes, the balance in the respondent's escrow account was $12,989.23. The closing did not take place until December 31, 1986.

On October 31, 1986, the balance in the respondent's escrow account, according to the bank statement, fell to $9,428.91, and to $3,744.86 on November 11, 1986.

Charge Eight alleged that the respondent engaged in conduct which is prejudicial to the administration of justice, which reflects adversely on his fitness to practice law, and which violates 22 NYCRR 691.20 (d) (1).

The respondent was retained to represent Richard Julian in a negligence matter. On or about December 1, 1987, he deposited a $10,000 check from Travelers Insurance Company on behalf of Julian into three Bank of New York accounts. Of that sum, $7,000 was deposited into the respondent's escrow account, $2,000 into his operating account, and $1,000 into a third account maintained in his name. By splitting the check on behalf of his client rather than depositing the total sum in his special account, the respondent violated 22 NYCRR 691.20 (d) (1).

Charge Nine alleged that the respondent failed to maintain a duly constituted escrow account and failed to account for funds entrusted to him to be held in escrow.

On or about October 28, 1987, the respondent wrote a check to Richard Julian in the amount of $6,585.94, drawn on his Bank of New York escrow account. Approximately five days later, the respondent deposited into his escrow account a check for $10,000 from Prudential Insurance Company on behalf of Julian. On or about December 3, 1987, the respondent wrote a check to Richard Julian in the amount of $6,667 and a check to himself in the amount of $3,000 referenced to "Julian". Out of the $17,000 in settlement funds deposited into his escrow account on behalf of Julian, the respondent left approximately $747 in the escrow account which was not accounted for.

Charge Ten alleged another act of conversion.

The respondent was retained to represent Stanley Streczyk in a negligence action, on or about July 23, 1984. On or about January 8, 1987, the respondent received a settlement check

from the Hartford Insurance Company, in settlement of Streczyk's claim, in the amount of $140,000. The respondent deposited or caused to be deposited $20,000 of this check into his operating account and $120,000 into his escrow account.

In and between approximately January 6 and January 15, 1987, the respondent issued three checks from his escrow account for a total of $83,856.94 to Stanley Streczyk and $105 in disbursements. The respondent retained a balance of approximately $36,038.06 in his escrow account.

In and between approximately August 2, 1984 and January 6, 1987, the respondent wrote 11 checks from his escrow account on behalf of Streczyk, totalling approximately $2,064.60. All of the checks except one were written at times when the respondent had not yet deposited the funds against which these checks were drawn. Pursuant to the retainer agreement with Stanley Streczyk filed with the Office of Court Administration (hereinafter OCA), the respondent was entitled to a fee of $33^{1}/3\%$, or approximately $45,897.52, after deducting all disbursements made on behalf of Streczyk, which were listed on the closing statement he filed with OCA.

Bank records from the respondent's escrow account reflect that no further checks were drawn to Stanley Streczyk through December 31, 1987. The respondent retained approximately $17,935 in his operating account and approximately $36,038 in his escrow account from the Hartford settlement check on behalf of Streczyk for a total of approximately $53,973. The respondent thereby converted approximately $8,075 belonging to Streczyk.

Charge Eleven alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct that reflects adversely on his fitness to practice law and which is prejudicial to the administration of justice by filing a false document with OCA.

The respondent filed or caused to be filed a closing statement with OCA regarding the Streczyk settlement, as required by 22 NYCRR 691.20. The closing statement reports that Stanley Streczyk received $91,956.94 and that the respondent received $45,978.46 as a fee in the Streczyk matter. In fact, the respondent received approximately $53,973 and Streczyk received approximately $83,856.

Charge Twelve is couched in terms of conversion.

The respondent wrote the 11 checks on behalf of Streczyk, as specified in Charge Ten, from funds belonging to other clients and required to be maintained in his escrow account.

Charge Thirteen alleged that the respondent engaged in conduct which is prejudicial to the administration of justice, which reflects adversely on his fitness to practice law, and which violates 22 NYCRR. 691.20 (d) (1).

By splitting the deposit of the Hartford Insurance check on behalf of Streczyk between his operating account and his escrow account, rather than depositing the entire check in his escrow account, the respondent violated 22 NYCRR 691.20 (d) (1).

Charge Fifteen alleged that the respondent engaged in conduct prejudicial to the administration of justice, which reflects adversely on his fitness to practice law, and which violates 22 NYCRR 691.20 (d) (1).

By splitting the deposit of the Prudential check on behalf of Flynn between his operating account and his escrow account, rather than depositing the entire amount in his escrow account, the respondent violated 22 NYCRR 691.20 (d) (1).

Charge Seventeen alleged conversion.

On or about May 2, 1986, the respondent was retained to represent Timothy Doran in a negligence matter. The respondent received three settlement checks in the Doran matter: a check from Allstate in the amount of $9,750, dated February 16, 1987; a check from Utica National Insurance Group in the amount of $3,250, dated February 27, 1987; and a check from United Community Insurance Company in the amount of $150, dated March 17, 1987. The respondent's bank records from January 1, 1987 through December 31, 1987 do not reflect any deposits of the aforesaid insurance checks.

The respondent drew the following checks from his escrow account, payable to Timothy Doran: a $4,000 check, dated February 20, 1987, referenced "settlement check"; a $3,000 check, dated March 3, 1987, referenced "partial settlement check"; and a $1,274.67 check, dated March 19, 1987, referenced "balance of settlement". The respondent thereby disbursed funds to Timothy Doran from his escrow account using funds belonging to other clients.

Charge Eighteen alleged that the respondent engaged in conduct prejudicial to the administration of justice, which reflects adversely on his fitness to practice law, and which violates 22 NYCRR 691.20 (d) (1).

The bank records from the respondent's escrow account reflect no deposit into his special account of the settlement checks on behalf of Timothy Doran, in violation of 22 NYCRR 691.20 (d) (1).

Charge Nineteen alleged conversion.

Between approximately January 1988 and April 1988, the respondent wrote approximately 23 checks payable to himself from his escrow account, totalling approximately $53,000. The respondent has been unable to provide an explanation as to what matters or clients these withdrawals pertain to.

Charge Twenty-one alleged that the respondent commingled funds belonging to clients or third persons with his own funds, while possessing such funds as a fiduciary incident to his practice of law.

The respondent maintained an escrow account at the Bank of New York between January 1987 and May 1988. The respondent maintained an escrow account at the Ellenville National Bank between April 1988 and December 1988. During these time periods, the respondent left earned fees in his escrow account commingled with his client funds.

Charge Twenty-two alleged conversion.

In or about 1987 and 1988, the respondent represented Sandra LaMonica in a matrimonial action against her husband, Edward LaMonica, and represented Sandra and Edward LaMonica in the sale of real property in 1988. In or about January 1988, the respondent received check number 1342 from the account of Michael C. O'Dowd, payable to I. Peter Venezia, Escrow Account, in the amount of $5,590, referenced "LaMonica to O'Dowd". On or about January 14, 1988, the respondent deposited or caused to be deposited the O'Dowd check into his Bank of New York escrow account.

On or about August 11, 1988, the LaMonicas sold real property, located at Rye Hill Road in Monroe, to Kevin and Susan Ranck. The respondent's bank records for the escrow account show no checks payable to O'Dowd or LaMonica, referenced O'Dowd, through August 31, 1988.

The bank statements for the respondent's escrow account reflect that on May 31, 1988, the balance fell to $307.17. The respondent converted approximately $5,282 from the funds belonging to O'Dowd or LaMonica.

Charge Twenty-four alleged conversion.

In or about April 1988, the respondent opened a second escrow account at the Ellenville National Bank in Monroe, New York, entitled "I. Peter Venezia, Attorney-at-Law, Trust Account". This new account was an interest-bearing account.

The respondent did not pay this interest to his clients and, in 1988, withdrew interest in the approximate amount of $2,000 for his own use by way of a debit memo.

Charge Twenty-five alleged that the respondent engaged in conduct that adversely reflects on his fitness to practice law by failing to maintain and produce required books and records for his attorney escrow account, pursuant to Code of Professional Responsibility DR 9-102 (D) and (I) (22 NYCRR 1200.46 [22 NYCRR former 691.12 (c), (k)]).

From approximately January 1988 to December 1988, the respondent maintained two escrow accounts, one with the Bank of New York in Monroe and the other with the Ellenville National Bank in Monroe. During this period, the respondent failed to maintain records of all deposits in and withdrawals from his special accounts specifically identifying the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement. Nor did the respondent, during this period, maintain a separate record for his special accounts, showing the source of all funds deposited in such accounts, the names of all persons for whom the funds were held, the amount of such funds, the description and amounts or the names of all persons to whom such funds were disbursed.

Charge Twenty-six alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, conduct that is prejudicial to the administration of justice, and conduct that adversely reflects on his fitness to practice law by giving false and misleading testimony to the Grievance Committee, and by obstructing or attempting to obstruct the lawful investigation of the Grievance Committee.

On September 5, 1989, the respondent appeared before Grievance Counsel to give testimony under oath. The respondent was required, on that date, to produce all records required to be kept pursuant to Code of Professional Responsibility DR 9-102 (D) and (I) (22 NYCRR former 691.12 [c], [k]) for 1988. The respondent produced bank statements and cancelled checks for his escrow accounts but produced no check stubs. The respondent did not produce a ledger book or similar record containing the required information but produced, instead, a typewritten document which did not show the date and source of all deposits or the description, amounts, and names of all persons to whom such funds were disbursed. The respondent testified that he kept this document, as a ledger, "pursuant to the rule", and that it was kept in his computer.

During 1988, the respondent did not, in fact, keep the document referred to as his "ledger" in a computer and did not keep a separate ledger as required by the rules.

Charge Twenty-seven alleged that the respondent is guilty of sharing fees with a nonlawyer.

In or about 1987 and 1988, the respondent employed a nonlawyer as a paralegal to handle negligence cases. The respondent paid this nonlawyer a percentage of the recovery received in the settlement of claims as a bonus, in addition to a salary.

Charge Twenty-nine alleged that the respondent engaged in conduct that adversely reflects on his fitness to practice law by failing to maintain a duly constituted escrow account.

In or about 1987 and 1988, the respondent wrote approximately 31 checks from his escrow account with the Bank of New York in Monroe, payable to Irene Curtain or Nancy Schneider, Esq. The respondent failed to maintain any records of deposits into his escrow account of funds on which these checks were drawn.

Charge Thirty alleged conversion.

On or about November 26, 1986, the respondent issued check number 2910 against his Bank of New York escrow account, in the amount of $100. This check was payable to Citibank Visa and was referenced Joan Brannick, account number 4128 470 305 504. On or about November 26, 1986, the respondent had no funds on deposit in this escrow account on behalf of Joan Brannick.

Charge Thirty-one alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, conduct that is prejudicial to the administration of justice, and conduct that adversely reflects on his fitness to practice law by altering or causing to be altered the date of service on an affidavit of service.

In or about January or February 1988, the respondent caused to be served a summons and complaint on Joseph A. Umberto in an action pending in the Supreme Court, Orange County, captioned: *Monty Jordan and Penny Karen Jordan v Joseph A. Umberto and Catherine Umberto.* The summons and complaint were served by James T. Varian. After service was completed and the affidavit of service was signed by James T. Varian, the respondent altered or caused to be altered the date of service of that affidavit.

Based on the voluminous record and evidence adduced in the course of this disciplinary proceeding, the petitioner's motion to confirm in part and disaffirm in part is granted to the extent that Charges One, Two, Three, Four, Six through Thirteen,

Fifteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-four, Twenty-five, Twenty-six, Twenty-seven, and Twenty-nine through Thirty-one are sustained. The Grievance Committee's motion is otherwise denied. The respondent's cross motion is granted, only to the extent that Charges Five, Fourteen, and Twenty are not sustained, and is otherwise denied.

In determining an appropriate measure of discipline to impose, we have taken into consideration the respondent's admissions that he made errors on a few occasions due to sloppy bookkeeping and poor recordkeeping and that he delegated the business end of his practice to his employees. The respondent emphasized the numerous character letters submitted on his behalf, his community service, and his efforts to cooperate with the Grievance Committee to the best of his ability.

Notwithstanding the mitigation offered by the respondent, he is guilty of grievous acts of professional misconduct which warrant his disbarment.

MANGANO, P. J., ROSENBLATT, MILLER, O'BRIEN and SULLIVAN, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that Charges One, Two, Three, Four, Six through Thirteen, Fifteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-four, Twenty-five, Twenty-six, Twenty-seven, Twenty-nine, Thirty, and Thirty-one are sustained, and the motion is otherwise denied; and it is further,

Ordered that the respondent's cross motion is granted only to the extent that Charges Five, Fourteen, and Twenty are not sustained, and the cross motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, I. Peter Venezia, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, I. Peter Venezia is commanded to continue to desist and refrain from (1) practicing law in any form, either as

principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.